UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **LEONARD C. RHODES (#128585)** | **CIVIL ACTION** |
| **VERSUS** | |
| **LT. FREDDIE JACKSON** | **NO. 12-0194-BAJ** |

## RULING

This matter comes before the Court on the parties' cross-motions for summary judgment. (Docs. 22 and 28.)

The pro se plaintiff, an inmate confined at Elayn Hunt Correctional Center ("EHCC"), St. Gabriel, Louisiana, brought this action pursuant to 42 U.S.C. § 1983 against Lt. Freddie Jackson, complaining that the defendant violated the plaintiff's constitutional rights on June 13, 2011, by failing to protect the plaintiff from harm and by subjecting the plaintiff to excessive force and deliberate medical indifference on that date. The plaintiff further asserts that the actions of the defendant were undertaken in retaliation for the plaintiff's exercise of his First Amendment rights.

The defendant moves for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, a certified copy of the plaintiff's administrative remedy proceedings, a certified copy of excerpts from the plaintiff's medical records, a certified copy of the plaintiff's Daily Shower/Activity Log for the date June 13, 2011, a certified copy of pertinent excerpts from the plaintiff's June, 2011 interlock cellblock logbook, mental health logbook and chemical agent logbook, certified copies of the enemy lists of the plaintiff and co-inmate Travis Davis, certified copies of the Lockdown Cards for the plaintiff

and co-inmate Travis Davis which include the dates June 10 to 13, 2011, a certified copy of two disciplinary reports charged against the plaintiff by defendant Jackson on June 13, 2011 (charging the plaintiff with "Defiance" and "Aggravated Disobedience"), a copy of excerpts from the Louisiana Department of Public Safety and Corrections Disciplinary Rules and Procedures for Adult Offenders, a copy of EHCC Institutional Policy No. 300-A28 (relative to "Use of Chemical Agents"), and the affidavits of Rhonda Z. Weldon, Linda Krol, Matthew Sparks, Lloyd Robertson, Burton Washington, James E. Evans, Betty Johnson, Dr. Preety Singh and defendant Freddie Jackson.

The plaintiff moves for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, excerpts from the plaintiff's disciplinary proceedings and administrative remedy proceedings (including investigative statements submitted in January, 2012, by the defendant and Lt.Col. Betty Johnson), a copy of a Warden's Unusual Occurrence Report prepared relative to an event allegedly occurring in June, 2010 (involving a prior fight between the plaintiff and co-inmate Travis Davis), a copy of a Request for Protection made by the plaintiff dated June 22, 2011, copies of the enemy lists of the plaintiff and co-inmate Travis Davis, a copy of the defendant's Responses to Interrogatories, a copy of excerpts from the plaintiff's mental health logbook and tier logbook for the date June 13, 2011, a copy of the plaintiff's Daily Shower/Activity Log for the date June 13, 2011, copies of disciplinary charges levied against co-inmate Travis Davis on June 21, 2010, June 27, 2010, and June 13, 2011 (charging co-inmate Davis with "Defiance", "Fighting" and "Contraband"), a copy of a disciplinary report charged against the plaintiff by the defendant on June 13, 2011 (charging the plaintiff with "Defiance"), a copy of EHCC Institutional Policy No. 300-A28 (relative to "Use of Chemical Agents"), a

copy of an excerpt from a Middle District Court Docket Sheet reflecting a lawsuit filed by the plaintiff on or about June 3, 2011 (naming defendant Jackson as a defendant), a copy of an excerpt from an earlier administrative remedy proceeding filed by the plaintiff in 2011 (ARP No. EHCC-2011-535), a copy of a Health Care Request Form submitted by the plaintiff to prison officials dated June 14, 2011, copies of EHCC Bed Book Records dated June 8 and 16, 2011, a copy of excerpts from the Louisiana Department of Public Safety and Corrections Disciplinary Rules and Procedures for Adult Offenders, and the sworn statements of the plaintiff and co-inmates Ernest Montgomery and Jerrick Johnson.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. Celotex Corporation v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Supporting affidavits must set forth facts which would be admissible in evidence, and opposing responses must set forth specific facts showing that there is a genuine issue for trial.

If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. Anderson, supra. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex, supra.

Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. Little, supra, 37 F.3d at 1076. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. International Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257 (5th Cir. 1994), cert. denied, 502 U.S. 1059, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992).

In his Complaint, the plaintiff alleges that on June 13, 2011, he was housed in a cell on the suicide tier at EHCC when defendant Jackson placed a co-inmate, Travis Davis, in an adjacent cell notwithstanding plaintiff's complaint to the defendant that co-inmate Davis was an "enemy" of the plaintiff, and notwithstanding that there were other cells available on the tier. According to the plaintiff, defendant Jackson ignored the plaintiff's warning and also ignored a direct verbal threat made at that time by co-inmate Davis to harm the plaintiff. When the plaintiff threatened to complain to superior officers about defendant Jackson's conduct, the defendant allegedly responded that he "didn't care" if the plaintiff made such a complaint. Further, when the plaintiff and the co-defendant allegedly began to argue with each other, the defendant merely told the plaintiff to stop causing a disturbance.

According to the plaintiff, defendant Jackson then left the tier but returned to the plaintiff's cell five or ten minutes later and, without warning or provocation, sprayed the plaintiff with a chemical agent. The defendant again left the tier but allegedly returned

4

shortly thereafter and again sprayed the plaintiff with a chemical agent. The plaintiff was then placed in restraints by defendant Jackson and was placed in an observation cell for approximately one hour without an opportunity for a shower. In addition, the plaintiff complains that defendant Jackson then returned the plaintiff to the cell adjacent to co-inmate Davis, subjecting the plaintiff to a continued fear of harm at the hands of Davis. The plaintiff asserts that the actions of defendant Jackson were motivated by retaliatory animus because the plaintiff had filed a previous administrative grievance and lawsuit against the defendant.

Addressing first the defendant's Motion for Summary Judgment, the defendant initially contends that the plaintiff has failed to exhaust administrative remedies as mandated by to 42 U.S.C. § 1997e relative to certain of the claims asserted in the Complaint. Pursuant to this statute, the plaintiff was required to exhaust available administrative remedies prior to commencing a lawsuit in federal court relative to prison conditions. This provision is mandatory and allows for no exceptions. Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.ed.2d 12 (2002). One of the principal purposes of the administrative exhaustion requirement is to provide fair notice to prison officials of an inmate's specific complaints so as to provide "'time and opportunity to address complaints internally.'" Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004), quoting Porter v. Nussle, supra.

From a review of the plaintiff's pertinent administrative grievance, it appears that the defendant's motion is well-taken, but only in part. Specifically, the Court finds that the plaintiff's pertinent administrative grievance makes no reference to the alleged failure of the defendant to allow the plaintiff to shower after the application of chemical spray on

June 13, 2011. It appears, therefore, that this aspect of the plaintiff's Complaint is subject to dismissal for failure to exhaust administrative remedies. Notwithstanding, the defendant's motion also seeks dismissal, for lack of exhaustion, of the plaintiff's claim asserted against the defendant "of failure to protect and deliberate indifference". A review of the plaintiff's grievance, however, reflects that the plaintiff clearly complains therein of having been placed in a cell adjacent to an enemy co-inmate, and this assertion effectively states a claim that the defendant failed to protect the plaintiff from harm at the hands of the co-inmate.

Further, inasmuch as the standard for a failure-to-protect claim is one of deliberate indifference to a known risk of injury to the plaintiff's safety, see Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), the Court finds that the plaintiff's grievance provided adequate notice that the plaintiff was complaining therein of a failure to protect and of deliberate indifference so as to "provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit." Johnson v. Johnson, supra. For this reason, the defendant's motion shall be denied in this respect.

The defendant next seeks dismissal of the plaintiff's claim for monetary damages asserted against the defendant in the defendant's official capacity. In this regard, the defendant correctly points out that § 1983 does not provide a federal forum for a litigant who seeks recovery of monetary damages against either a state or its officials acting in their official capacities, which officials are not seen to be "persons" under § 1983. Will v. Michigan Department of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Further, in Hafer v. Melo, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), the United

States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in his official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment.  Id.  Accordingly, the plaintiff's claim for monetary damages asserted against the defendant in the defendant's official capacity is subject to dismissal.

In contrast, the plaintiff's claim for monetary damages asserted against the defendant in the defendant's individual capacity remains viable because a claim against a state official in the official's individual capacity, seeking to impose liability for actions taken by the official under color of state law, is not treated as a suit against the state. Hafer v. Melo, supra. Thus, a showing by the plaintiff that the defendant, acting individually and under color of state law, intentionally caused the deprivation of the plaintiff's federal rights, would be enough to establish personal liability in a § 1983 lawsuit. Id.[1]

Finally, the defendant contends that he is entitled to qualified immunity in connection with the plaintiff's remaining claims.  Specifically, the defendant contends that the plaintiff has failed to produce, and will be unable to produce, evidence of conduct on the defendant's part sufficient to create a genuine issue of disputed fact and/or sufficient to support a finding that the defendant violated the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks.  Hale v.

---

[1] The plaintiff's official capacity claim for injunctive relief also remains potentially viable because a state official, when sued for injunctive relief in his official capacity, is not a prohibited defendant.  Specifically, official capacity claims for prospective relief are not treated as claims against the state. Will v. Michigan Department of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 2311, 105 L.Ed.2d 45 (1989).  See also 15 Am.Jur.2d Civil Rights § 101.

Townley, 45 F.3d 914 (5th Cir. 1995).  As enunciated in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendants' conduct violated the plaintiff's constitutional rights.  Second, the district court looks to whether the rights allegedly violated were clearly established.  This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition.  The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted.  Id.[2]

Undertaking the qualified immunity analysis with respect to the plaintiff's claims, the Court finds that the defendant's motion should be granted and that the plaintiff's allegations and evidentiary showing fail to overcome the assertion of qualified immunity.

First, with regard to the plaintiff's claim that the defendant failed to protect the plaintiff from harm at the hands of co-inmate Davis, the Court finds that this claim is subject to dismissal because the plaintiff has failed to allege or show that he sustained any harm or injury in fact as a result of the co-inmate having been placed in an adjacent cell.  In this regard, a prisoner has a constitutional right under the Eighth Amendment to be sheltered from a constant threat of harm or violence at the hands of other inmates.  Jones v. Diamond, 636 F.2d 1364 (5th Cir. 1981); Johnston v. Lucas, 786 F.2d 1254 (5th Cir. 1986).  Notwithstanding, pursuant to 42 U.S.C. § 1997e(e), an inmate plaintiff is barred from the

---

[2]     The United States Supreme Court has held that rigid chronological adherence to the Saucier two-step methodology is not mandatory.  Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Although the Saucier methodology will be "often beneficial", the Callahan Court leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis.

recovery of monetary damages for purely mental or emotional injuries unless he has sustained some physical injury as a result of a defendant's alleged wrongful conduct.

In the instant case, the plaintiff does not allege that co-inmate Davis caused the plaintiff any physical harm or injury as a result of the two inmates having been placed in adjacent cells. To the contrary, the plaintiff alleges only that he and the co-inmate became involved in a verbal confrontation on June 13, 2011, after which defendant Jackson reacted by subjecting the plaintiff to a chemical agent. The plaintiff's alleged injuries, therefore, if any, are not attributable to any harm inflicted by the co-inmate but are instead the result of the defendant's alleged wrongful conduct in subjecting the plaintiff to one or more applications of a chemical agent.[3] For this reason, the Court finds that the plaintiff has failed to state a cause of action relative to an alleged failure to protect him from harm by the co-inmate.[4]

Turning to the plaintiff's claim of excessive force, the issue is a closer one but the Court nonetheless concludes, for the following reasons, that the defendant's motion should be granted relative to this claim.

Force is excessive and violates the Eighth Amendment of the United States Constitution only if it is applied maliciously and sadistically for the very purpose of causing

---

[3] In addition, according to evidence adduced by the defendant, although the plaintiff and co-inmate Davis had been involved in a fight in May, 2010, more than a year prior to the incident complained of herein, and had been placed on each other's enemy lists at that time, the inmates' respective enemy lists further reflect that the conflict between the two inmates had been "cleared" in February, 2011, several months prior to the incident complained of in this proceeding. Accordingly, on the evening of the referenced incident, neither inmate was noted to be an enemy of the other.

[4] The plaintiff also alleges that, after the incident of excessive force by defendant Jackson, the defendant returned the plaintiff to the cell adjacent to the enemy co-inmate and, the next day, the co-inmate urinated into the plaintiff's cell through a crack between the cells. This wrongdoing by the co-inmate, however, while offensive and unsavory, did not subject the plaintiff to any harm in fact and does not support a claim against the defendant of a violation of the plaintiff's constitutional rights.

harm rather than in a good faith effort to maintain or restore discipline. Wilkins v. Gaddy, 559 U.S. 34, 130 S.Ct. 1175, 175 L.Ed.2d 995 (2010), quoting Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). Not every malevolent action by a prison guard, however, gives rise to a federal cause of action, and the Eighth Amendment's prohibition against cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind." Hudson v. McMillian, supra.

The mere absence of serious injury resulting from a use of force, however, does not end the inquiry because an inmate who is gratuitously subjected to excessive force by correctional officers "does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, supra. Factors to be considered in determining whether the use of force has been excessive include the extent of injury sustained, if any, the need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response. Hudson v. McMillian, supra.

Applying the foregoing standard, the Court finds that the plaintiff has failed to come forward with evidence of conduct on the defendant's part sufficient to support a finding that the defendant violated the plaintiff's constitutional rights. Specifically, although the defendant admits to having sprayed a chemical agent into the plaintiff's cell on the evening of June 13, 2011, the plaintiff admits to having engaged in an ongoing heated verbal exchange with both the defendant and with the adjacent co-inmate, insisting to the defendant that the plaintiff and co-inmate could not be housed in adjacent cells because

they were purportedly enemies.[5] The plaintiff further acknowledges that, in response to this heated verbal exchange, a mental health officer was called to the tier for the purpose of urging the plaintiff to calm down and to cease causing the disturbance. This is further confirmed by a notation in the mental health logbook for the date in question which reflects that the plaintiff was "causing a disturbance, . . . talking extremely loud and cursing other inmates." This logbook further reflects that, after speaking with the plaintiff, the mental health officer authorized the defendant security officer to "use whatever means necessary to restore order on [the] tier." As a practical matter, had there been no ongoing verbal dispute and disturbance involving the plaintiff, there would have been no reason to call the referenced mental health officer. Further, it appears that it was only after seeking intervention from the mental health officer and after obtaining authorization from the mental health officer that the defendant employed a brief application of a chemical agent into the plaintiff's cell. It thus appears that there was a reasonable justification for some application of force by the defendant, which application was necessitated by the plaintiff's admitted disruptive conduct. It further appears that the force which was utilized by the defendant was not excessive to the situation presented.[6] Specifically, the plaintiff has not alleged that he suffered any appreciable injury as a result of the referenced application of the chemical agent.

---

[5] See, e.g., Doc. 44, wherein the plaintiff admits that he was "arguing the fact of being housed next to a known enemy," admits that he and the co-inmate were "threaten[ing] and cursing each other," and admits that the defendant summoned a mental health worker to the tier to evaluate the plaintiff's continuing disruptive behavior.

[6] Although the plaintiff complains that the defendant did not apply any chemical agent into the co-inmate's cell, the Court finds this fact to be irrelevant to its determination.

11

Although the United States Supreme Court has made clear that the absence of serious injury does not alone defeat an excessive force claim, the Court has further stated that "the extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation," and "may also provide some indication of the amount of force applied." Wilkins v. Gaddy, supra.

In the instant case, the plaintiff's medical record from the date of the incident reflects that a medical technician examined the plaintiff after the incident and noted that the examination was unremarkable, that the plaintiff exhibited no obvious signs of injury or trauma, and that the plaintiff denied any injury at that time. Further, it does not appear that the plaintiff sought further medical treatment after the date of the incident for injuries allegedly resulting from the use of the chemical agent. Thus, in the absence of any allegation or evidence suggesting that the plaintiff suffered any appreciable injury as a result of the defendant's conduct, the Court is persuaded that the force utilized was not excessive under the circumstances presented. See, e.g., Davis v. Cannon, 91 Fed.Appx. 327 (5th Cir. 2004) (upholding summary judgment granted to security officer and finding no excessive force where security officer utilized chemical agent after the plaintiff inmate refused to obey orders and where the chemical agent did not result in any physical injury); Baldwin v. Stalder, 137 F.3d 836 (5th Cir. 1998) (reversing denial of summary judgment to security officer in case involving a 2-second application of chemical agent to an inmate in a disruptive situation); Williams v. Williams, 2012 WL 5289880 (N.D. Tex., Sept. 25, 2012).

Accordingly, on the basis of the parties' showings, and based on the standard set forth in the Wilkins case, supra, the Court finds that summary judgment should be granted in favor of the defendant in connection with the plaintiff's claim of excessive force and that this claim should be dismissed.

Finally, the plaintiff asserts that the actions of defendant Jackson, in both failing to protect the plaintiff from harm and in subjecting the plaintiff to one or more applications of a chemical agent, were motivated by retaliatory animus in response to the plaintiff having filed and/or threatened to file an administrative grievance or lawsuit against the defendant. In this regard, the law is clear that the taking of action against an inmate because of the inmate's exercise of his First Amendment right to complain to supervisory officials about the alleged wrongful conduct of prison security officers is a violation of the inmate's constitutional rights. Ruiz v. Estelle, 679 F.2d 1115 (5th Cir.), opinion amended in part and vacated in part, 688 F.2d 266 (1982), cert. denied, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983); Gibbs v. King, 779 F.2d 1040 (5th Cir.), cert. denied, 476 U.S. 1117, 106 S.Ct. 1975, 90 L.Ed.2d 659 (1986). However, claims of retaliation are not favored, and it is the plaintiff's burden to provide more than a mere conclusory allegation of retaliation:

> To state a claim of retaliation an inmate must . . . be prepared to establish that but for the retaliatory motive the complained of incident . . . would not have occurred. This places a significant burden on the inmate. . . . The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred.

Woods v. Smith, 60 F.3d. 1161 (5th Cir. 1995).

In the instant case, it appears that the plaintiff has failed to sufficiently allege or support a claim of retaliation against defendant Jackson relative to the alleged incident of

13

June 13, 2011. Specifically, the plaintiff provides no more than a conclusory assertion that he believes that the defendant's actions were motivated by retaliatory animus, and he provides no real chronology of events from which a retaliatory motive may plausibly be inferred.

Although the plaintiff asserts that he threatened to file a grievance against the defendant on the date of the incident, the plaintiff acknowledges that the defendant responded to this threat by stating that he did not care whether the plaintiff filed the referenced grievance. The plaintiff also asserts that he filed an administrative grievance and lawsuit against the defendant prior to the events complained of, and he asserts that such filing gave the defendant "a motive of wanting to harm me". Notwithstanding, the mere filing of a prior administrative grievance by the plaintiff, which related to unrelated events occurring on June 6, 2011, and which may not even have been filed by the plaintiff or received by prison officials prior to the events complained of (and was not even responded to by prison officials until September, 2011, long after the pertinent events),[7] does not support a finding that the actions of the defendant were motivated by the prior grievance. And although the plaintiff apparently filed a lawsuit on or about June 3, 2011, shortly before the events complained of herein, in which the defendant was apparently named as a party, the Complaint in that lawsuit was not served upon defendant Jackson, giving the defendant notice thereof, until July 6, 2011, after the events complained of on

---

[7] The plaintiff does not provide a copy of the prior grievance and instead provides only a copy of a response thereto by prison officials, dated September 28, 2011. Thus, there is no indication that the plaintiff filed the grievance prior to the events complained of, that prison officials received the grievance prior thereto, or that the defendant was even named in the grievance or had notice thereof prior to June 13, 2011.

June 13, 2011. Thus, the filing of the prior lawsuit may not be seen to have motivated the alleged wrongful conduct of the defendant.

Accordingly, based upon the evidence presented by the parties, it does not appear that the plaintiff has established or will be able to establish that the actions of the defendant in this case were motivated by retaliatory animus in response to the plaintiff's exercise of his First Amendment constitutional rights. For this reason, the defendant's motion for summary judgment is granted in connection with this issue.

Based on the foregoing,

**IT IS ORDERED** that the plaintiff's motion for summary judgment (Doc. 28) is **DENIED** and that the defendant's motion for summary judgment (Doc. 22) is **GRANTED**.

Judgment shall be entered accordingly.

Baton Rouge, Louisiana, this 30th day of January, 2013.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**